**COMMONWEALTH for the use of MILLER *against* BAR-
KER AND OTHERS.**

### IN ERROR.

A judgment was entered on the 11th *February,* 1811, and the 13th *April,* 1812, the defendant's attorney signed the following agreement on the *præcipe* for the execution, which was on the docket.

"I, as attorney of defendants in this case, agree that a *fi. fa.* issue for the residue of said judgment, without any revival of the same."

An execution was then issued, and put into the hands of the sheriff, which was found in the prothonotary's office, without any return upon it.

On the 16th *November,* 1816, the defendant confessed a judgment of revival. *Held:* that the lien of the judgment of 1811 was lost.

The agreement of the attorney was not like a revival of the judgment, much less an assent to confess a new judgment, that the lien might be revived for five years. The agreement was to suffer execution *without* a revival.

ERROR to the Court of Common pleas of Bedford county.

This was an action of debt on the official bond of *George M. Barker, Esquire,* the defendant, and his sureties, brought to recover the amount of a judgment in favour of *Robert Miller,* the plaintiff, against *Benjamin Burd;* which the plaintiff claimed out of the proceeds of the sale of the real estate of *Benjamin Burd,* which had been sold by *Barker,* as sheriff of Bedford county, on an execution.

*Robert Miller's* judgment was entered of record in the Court of Common Pleas of Bedford county, to April term, 1811, on the 6th day of April, 1811, and its lien regularly preserved.

The proceeds of sale were also claimed on a judgment of record in the same Court, in favor of *Thomas Cromwell,* against *Benjamin Burd,* and the controversy turned on the question whether the lien of this judgment had been continued. The facts being agreed' upon, a special verdict was found, upon which the Court below gave judgment in favor of the defendants.

(Commonwealth *v.* Barker and others.)

*Thomas' Cromwell's* judgment was entered to *May term,* 1806, on the 2d day of *June*, 1806; on which a *scire facias* issued to *January* term, 1811, on the 20th day of *November*, 1810, and on the 11th *February*, 1811, a judgment was rendered thereupon.

On the 13th of April, 1812, the defendant's attorney signed the following agreement on the praecipe, for the execution, which was on the docket. "I as attorney for the defendant in this case, agree that a *fi. fa.* issue for the residue of such judgment, without any revival of the same." On the 16th April, 1812, a *fi. fa.* issued to *August term*, 1812, and was put into the hands of the sheriff, and was afterwards found in the office of the prothonotary, without indorsement thereon of any proceedings of the sheriff.

An amicable *scire facias* to revive this judgment was entered to *January term*, 1817, and on the 20th November, 1816, the defendant confessed a judgment of revival. The lien of this judgment so entered was preserved, but the question raised was whether the lien of the original judgment had not been lost, by the neglect to revive the judgment within five years from the 11th February, 1811, when the first judgment of revival was entered.

*McCulloch* for the plaintiff in error

Contended that the *fi. fa.* to *August term*, 1812, upon which no levy and no return had been made by the sheriff, did not preserve the lien of the judgment entered on the 2d *June*, 1806. *Betz' appeal*, 1 *Penna. Rep.* 271. The question thus comes round to the effect of the agreement of the 13th *April*, 1812, signed by the attorney of the defendant on the record. Does this agreement amount to a revival of the judgment? On its face it imports the reverse.

The act of 1798 was not passed for the benefit of the defendant, as was the object of the statute of Westminster, which requires the *scire facias post annum et diem*, but it had expressly in view third persons, purchasers and judgment creditors.

The judgment by this act remains effectual against the defendant, but as to the third persons, who have subsequently acquired an interest, unless it is properly revived it ceases to be a lien.

By the statute of Westminster after the lapse of a year and a day, execution could not issue unless the defendant, for whose benefit the act was passed, agreed to dispense with a *scire facias*: and this he may do. Not so of the *scire facias* under our acts of

30

(Commonwealth *v.* Barker and others.)

assembly, the defendant cannot dispense with that, so as to pre-serve the lien of the judgment, as to third persons.

Our Courts have in certain cases construed this act with refer-ence to the British statute, and although these cases are not to be disputed, yet as no analogy existed in fact, between the two statutes, this Court will go no further, and in the recent decision, *Betz's appeal,* 1 *Penna. Rep.* 271, it has got back as far as prac-ticable to the true construction of our act, unembarrassed by this analogy.

In the case at bar, the execution taken out on which nothing was done, had not the effect of preserving the lien of the judg-ment, and surely the agreement to waive the lapse of a year and a day from the time of the judgment, can have no greater effect than the execution itself.

Nothing can be more injurious and destructive to the interests of the community, than the constructive violation of statutes, letting in fancied interpretations, and prostrating the fair mean-ing of the legislature.

The Court have a memorable example of this in the judicial history of the statute of limitations, which was almost abrogated by this fanciful spirit of construction, but in England as here, we have now got back to the act.

So in regard to this act of assembly we have seen the same spirit of construction at work, until the many mischiefs it was likely to produce were manifest, and our Courts have gone back to the act itself. The modern doctrine of this Court on this subject is sustained by the recent act of our legislature which is declaratory of what the law was.

*Miles* for the defendant in error

The judgment of *Cromwell* is the oldest judgment, and unless it lost its lien, at some period between its original rendition, and the time of the sale made by sheriff *Barker,* it is entitled to be first paid out of the proceeds of that sale. It is contended by the plaintiff that it lost its lien between the 11th of February, 1811, (the date of the judgment on the first *scire facias,* suit,) and the 20th Nov. 1816 (the date of the judgment in the second *scire facias* suit) five years having elapsed from the first of those dates previous to the issuing of any *scire facias* to continue the lien, and that in the mean time the lien of his judgment attached to the land in question. He contended that *Cromwell's* judgment never lost its lien on two grounds. First—That the *fi. fa.* issued upon it preserved the lien and superseded the necessity of re-viving it by *scire facias.*

Secondly. That the agreement of 13th April, 1812, signed by

(Commonwealth *v.* Barker and others.)

the defendant's attorney, and spread upon the record, amounts virtually to a *revival* of the judgment, and is equivalent to the issuing of a *scire facias.*

As to the first ground, *Judge Yeates,* in declaring the opinion of the Court, in the case of *Young v. Taylor,* 2 *Bin.* 228, lays down the broad principle that the act of assembly of the 4th *April* 1798, did not abolish the mode of keeping judgment alive by issuing an execution within the year and day; superseding the necessity of issuing a *scire facias* under the statute of *Westminster,* 2d; and the decision in this case has been recognized by the Supreme Court in several subsequent cases, as establishing the general doctrine "*that the issuing of an execution within the year continues the lien without resorting to a scire facias.*" It was so held in the case of *Pennock* v. *Hart,* 8 *Serg. & Rawle,* 398, and in the case of *the Commonwealth* for the use of *Pennock's executors* v. *McKisson & others,* 13 *Serg. & Rawle,* 147. The same rules apply to the act of th 4th *April,* 1798, in regard to keeping judgments alive, which apply to the statute of *Westminster,* 2d. *Young* v. *Taylor,* 2 *Bin.* 228. *Pennock* v. *Hart,* 376. *The Commonwealth* for the use of *Pennock's executors* v. *McKisson and others,* 13 *Serg. & Rawle,* 147. *Judge Duncan,* in the last case, makes use of this language, "*whatever would be such a proceeding within the year and day, as would render it unnecessary to issue the scire facias according to the statute would continue the lien under the act of* 1798." Now under the statute of *Westminster* 2d, where an execution has been issued within a year and day, an *alias* execution may be issued at any time thereafter without a *scire facias,* 2d *Tidd.* 1003, and that too where the writ has not been executed (which is exactly the case in regard to *Cromwell's* judgment) provided the first writ be returned, and continuances entered on the record from the time of issuing it. 2 *Tidd.* 1004: and these continuances may be entered after the issuing of the second writ. 2 *Tidd.* 1004. 13 *Serg. & Rawle,* 147. But in Pennsylvania the continuances may be filled up without even having the first writ *returned. Lewis* v. *Smith,* 2 *Serg. & Rawle,* 157. And *Judge Duncan,* in delivering the opinion of the Court in the case of the *Commonwealth for Pennock's executors* v. *McKisson,* says that "*the entry of continuances with us are so much a matter of form that they are never entered at all.*"

But it may be contended that the *fi. fa.* issued on *Cromwell's* judgment was not issued within the year and day, and that it therefore does not come within the rules established by the cases referred to. As regards the inquiry in this case however, it must be considered as resting upon the same footing as an execution issued within the year and day. It was issued with the *consent*

(Commonwealth *v.* Barker and others.)

of the defendant, (the only person who had a right to object to it,) and at a time too when the lien of the judgment was unquestionably good.. The *scire facias* is for the benefit of the defendant, and the reason why the plaintiff is required to issue it after the lapse of a year and a day, is because he is presumed from the length of time, to have released the execution, and therefore the defendant shall not be disturbed without being called on, and having an opportunity of pleading the release, or showing cause why the execution should not go. 13 *Serg. & Rawle,* 147. But when the defendant agrees that the execution shall issue, certainly it countervails the presumption of a release, and supersedes the necessity of a *scire facias.* The *scire facias* calls upon the defendant to shew cause why the plaintiff shall not have his execution, but he by his own act argues that he shall have it, so that the issuing of the *scire facias* would be oppression, and such a nugatory act as the law requires no man to perform. The necessary result of this reasoning is, that the execution issued regularly, and with the same effect as if it had been issued within the year and day. But even if it had issued without the consent of the defendant after the year and day, it would not be competent to third persons to object to it. It would have been *voidable* by the defendant in that case on error, or by motion to the Court, but not *void. Young v. Taylor,* 2 *Bin.* 230-'1. *Miller* v. *Milford,* 2 *Serg. & Rawle,* 39. It was good between the parties and as to all others, until reversed.

The act of the 26th March, 1827, has no bearing upon this case.

On the second ground he argued that the agreement of the defendant's attorney, dated the 13th April, 1812, amounts virtually to a *revival* of the judgment, and is equivalent to the issuing of a *scire facias.*

Agreements are to be construed so as to effectuate the intentions of the parties without regard to the ordinary acceptation of particular words used, where such words would render a contract ineffective and frivolous. 1 *Powell on contracts,* 230. 1 *Rawle,* 162. What was the intent of the agreement of the 13th April, 1812? Was it not to give the plaintiff, *Cromwell,* the full benefit of his judgment by placing it in such a situation as that it would be to all intents and purposes as available a security as any judgment could be to enable him to collect his debt? Was not the very object of the agreement to place the judgment in the very self-same situation as if it had been revived by *scire facias?* If this was the object, (and that it is impossible for the mind to doubt,) to give effect to that object the agreement must be construed to be an agreement for the revival of the judgment. What is the *revival* of a judgment? It is an acknowledgment of record

(Commonwealth *v.* Barker and others.)

that the judgment is unsatisfied, and that the party has not re-
leased his execution. But the agreement of the 13th April, 1812,
as placed upon the docket is an acknowledgment of record that
the judgment was unsatisfied at the date of that agreement, and
therefore amounts to a *revival* of the judgment.   In a *scire fa-
cias post annum et diem*, if the defendant cannot shew payment
of the debt, or something equivalent to payment, the judgment
will be revived as a matter of course, which revival is nothing
more in effect than proof of the judgment being unpaid.   The
*scire facias* calls upon the party to shew cause why an execution
shall not issue, and on failing to shew such cause, the judgment
is that the plaintiff *shall have his execution.*   An amicable revi
val of a judgment is an agreement of record that the plaintiff shall
have his execution—the agreement of the 13th *April*, 1812, is
an agreement of record that the plaintiff should have his execu-
tion, and the same legal consequences must result from it which
would have followed if it had been an amicable agreement for a
*revival* of the judgment in the common form.   If therefore
we look at the intent of the parties, and the objects to be ob-
tained by the agreement, or to the substance of the agreement
itself, it amounts to a virtual revival of the judgment.

But whether it be considered as a *revival* in technical language
or not, it was equivalent to the issuing of a *scire facias*, and the
limitation of five years would commence running from the date
of this agreement if our first position be not sustained.   Surely
it would be as efficacious to preserve the lien, as an agreement
made at the date of the judgment for a stay of execution until
that time, would have been.   And where there is an agreement
for a stay of execution, and although that agreement is not placed
upon the record, the year and day does not commence running
until the stay of execution, according to the agreement, has ex-
pired. *Dunlop* v. *Spur*, 3 *Bin.* 172.  *Miller's administra-
tors* v. *Milford*, 2 *Serg. & Rawle*, 36.  In such a case no *scire
facias* is necessary until a year and a day after the stay of exe-
cution has expired, because no *presumption of payment* has
arisen from the lapse of time.   The *scire facias* therefore is predi-
cated upon the presumption of payment having arisen, but any
fact or circumstance which goes to shew that such presumption
has not arisen, will supersede the necessity of a *scire facias*.   3
*Bin.* 172.   2 *Serg. & Rawle*, 36.   8 *Serg. & Rawle*, 377.   So
where there is a *cesset executio*, the limitation of five years does
not commence running until the stay has expired, and this too
is on the principle that no presumption of payment can arise un-
til after the expiration of the stay.

From these authorities it seems conclusive that the year and
day, and the limitation of five years never commenced running

until after the presumption of payment can arise; and whenever presumption is rebutted the limitation can never be carried further back than the day on which such presumption is rebutted. . Here the presumption is completely rebutted on the 13th April, 1812, at a time too when the lien of the judgment was clearly good, and five years did not elapse between that time and the 20th Nov. 1816, on which day the judgment was revived in the second *scire facias* suit, and there is no pretence that it lost its lien after that date.

*Chambers* on the same side.

The act of 1798 with respect to the lien of judgments has received a liberal construction.

Whether such a construction ought to have been given is not now a question—it has been given in a variety of cases, and has furnished a rule to parties, counsel, and Courts.

As to new cases, the act of 1827 furnishes the rule for their government.

We ask the Court to apply to an old case the rule furnished at the time by the decisions of our highest judicial tribunal.

The object and intent of the act was make known by some act of notoriety, on the record, that the money was due.

When the law would raise no presumption in favor of debtors, there is no reason to suppose the existence of the judgment as an incumbrance, would be a surprise on a purchaser. *Pennock* v. *Hart*, 8 *Serg. & Rawle*, 378.

An execution levied dispensed with *scire facias.*

A *scire facias* issued within five years, and returned *tarde venit*, and after the expiration of five years an *alias* issued, on which judgment was reversed, held good, and lien maintained. 8 *Serg. & Rawle*, 378.

A stay of execution placed on record has been adjudged to dispense with a *scire facias.* 8 *Serg. & Rawle*, 377.

The agreement of the counsel, is to be taken as a *revival* dispensing with the formal revival by *scire facias.*

Form is now as much disregarded in our judicial proceedings, as in deeds and other writings, when the intention of the parties is to be effectuated.

But if not considered as a revival, it was an agreement of the parties on the record, by which the existence of the debt was made known with notoriety.

That notoriety was greater than what would have been afforded by an execution issued and levied—by a stay of execution, or by a *scire facias* unexecuted.

As respected notoriety it had all the effect of a revival, and for the preservation of the lien it ought to have the same effect.

(Commonwealth *v.* Barker and others.)

In a recent case decided at the last term at Pittsburg, an agreement to revive the judgment entered on the original judgment, but not brought forward and docketed afresh, was held to be sufficient to preserve the lien of the judgment: which he contended was analogous to the case at bar.

*McCulloch* in reply.

This case is not within any of the cases decided, and the act should not be destroyed by the reasoning of judges, which by ingenuity may be applied to new cases.

It was the intention of the legislature that the judgment should be brought forward, to avoid the evil of being obliged to look back through an almost indefinite period for liens; to guard against which, in the act of 1827, a judgment docket is required to be kept.

The agreement of the defendant's attorney has no other effect than to dispense with a revival of the judgment under the statute of *Westminster*, and to authorize an execution, although the year and day had elapsed.

And in fact without such agreement the execution would have been good, if the *defendant* did not choose to object to it. This is personal to the defendant. But the agreement does not dispense with the necessity of conformity to the act of 1798, which is for the benefit of strangers to the judgment.

*Per Curiam.* There is nothing in the agreement like the revival of the judgment, much less an assent to confess a new judgment that the lien be revived for five years. On the contrary the agreement was to suffer execution to go *without* a revival. The meaning is plain that the plaintiff should proceed without the trouble and expense of a *scire facias*, and this was the whole object in view. As to an extension of a lien from the admission that the judgment was unsatisfied, we are not prepared to carry the principle of *Waln* v. *Sherman*, beyond the circumstances of that case, which are altogether unlike the present. The Court therefore erred in determining *Cromwell's* judgment to be a lien.

Judgment reversed, and judgment rendered for the plaintiff.